**NOT YET SCHEDULED FOR ORAL ARGUMENT**

*In the*

# United States Court of Appeals

*for the*

# District of Columbia Circuit

---

Case Nos. 15-1358 & 15-1431

---

BENJAMIN H. REALTY CORP.,

*Petitioner,*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent.*

---

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

v.

BENJAMIN H. REALTY CORP.,

*Respondent.*

---

ON APPEAL FROM THE NATIONAL LABOR RELATIONS BOARD

---

## BRIEF FOR PETITIONER

---

STEVEN B. HOROWITZ
HOROWITZ LAW GROUP, LLC
*Attorneys for Petitioner*
101 Eisenhower Parkway, 4th Floor
Roseland, New Jersey 07068
(973) 226-1500
shorowitz@horowitzlawgroup.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Benjamin H. Realty Corp. operates as a "C" Corporation in the State of New Jersey.  Benjamin H. Realty Corp. is not owned in turn by any parent companies or any publicly-held company that has a 10% or greater ownership interest in the entity.

Dated:          February 16, 2016
               Roseland, New Jersey

                              Respectfully submitted:


                              By: */s/ Steven B. Horowitz*
                                  Steven B. Horowitz, Esq.
                                  Attorney for Petitioner
                                  Horowitz Law Group, LLC
                                  101 Eisenhower Parkway
                                  4th Floor
                                  Roseland, New Jersey 07068
                                  973-226-1500
                                  973-226-6888 (Facsimile)

i

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

COMES NOW, Benjamin H. Realty Corp., Petitioner in the above referenced matter, and files this, its Certificate of Counsel, pursuant to Cir.R.28(a)(1), by stating as follows:

1.    <u>Parties and Amici</u> - the parties, intervenors, and <u>Amici</u> who have appeared before the National Labor Relations Board are as follows:

(a)    Benjamin H. Realty Corp., 7 Glenwood Avenue, East Orange, New Jersey 07017.

(b)    Richard Griffin, Jr., General Counsel, Office of the General Counsel, National Labor Relations Board, 1015 Half Street, SE, Washington, DC 20570-0001.

(c)    Residential Construction and General Service Workers, Laborers Local 55, 59 Wall Street, Suite 202-B, Newark, New Jersey 07105-3225.

2.    <u>Rulings under Review</u> - as per the Docketing Statement, Petitioners seek review of the Decisions of the National Labor Relations Board dated November 13, 2014 and May 7, 2015 (related to 22-CA-110689 and 22-RC-087792) and August 25, 2015 (related to 22-CA-110689).   The Decisions can be found at JA-1344, 1433, and 1441 respectively.

3.     <u>Related Cases</u> - the case on review has never been before the Court or any other Court of similar jurisdiction.

Dated:  February 16, 2016

Respectfully submitted:

By: <u>*/s/Steven B. Horowitz*</u>
        Steven B. Horowitz, Esq.
        Attorney for Petitioner
        Horowitz Law Group, LLC
        101 Eisenhower Parkway
        4th Floor
        Roseland, New Jersey 07068
        973-226-1500
        973-226-6888 (Facsimile)

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**.................................i

**CERTIFICATE AS TO PARTIES, RULINGS
     AND RELATED CASES** ...........................................ii-iii

**TABLE OF AUTHORITIES** .................................................iv-vi

**GLOSSARY OF ABBREVATIONS** .....................................vii

**JURISDICTIONAL STATEMENT** .......................................1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**.............1

**PERTINENT STATUTES** ......................................................2

**STATEMENT OF THE CASE** ..............................................6

**SUMMARY OF THE ARGUMENT** ....................................19

**STANDING** ..........................................................................23

**ARGUMENT** .......................................................................23

**POINT I     THE HO ERRONEOUSLY CONCLUDED THAT
             PEREA WAS NOT A SUPERVISOR AT THE
             TIME OF THE ELECTION** ............................24

**POINT II     THE NLRB IMPROPERLY DENIED THE
             EMPLOYER'S MOTION FOR
             RECONSIDERATION AND MOTION TO
             REOPEN THE RECORD** .................................31

**POINT III   THE HO IMPROPERLY PLACED THE
             BURDEN OF PROOF OF PEREA'S
             SUPERVISORY STATUS ON THE EMPLOYER**......32

**CONCLUSION**....................................................................34

# TABLE OF AUTHORITIES

## CASES:

*Allstate Ins.*, 322 NLRB 759, 760 (2000) ................................................ 25

*Cherokee Heating and Air Conditioning Co.*,
280 NLRB 399 (1984) ................................................................... 25

*Country Ford Trucks, Inc. v. NLRB*,
  229 F.3d 1184, 1189 (D.C. Cir. 2000) .................................................. 20, 23

*Croft Metals, Inc.*, 348 NLRB 717 (2006) ............................................... 24

*Donaldson Bros.*, 341 NLRB 958, 959 (2004) ........................................ 24

*Facchina Construction Co., Inc.*, 343 NLRB,
  886, 886-87 (2004), enfd. 181 LRRM 3344 (D.C. Cir. 2006) ............. 25

*First Western Building Services,* 309 NLRB 591, 603 (1992) .............. 28

*Fred Meyer Alaska, Inc.*, 334 NLRB 646 (2001) .................................. 28, 29

*Golden Crest Healthcare Center*, 348 NLRB 727 (2006) ...................... 24

*Hook Drugs, Inc.*, 191 NLRB 189, 191 (1971) ..................................... 25

*Juniper Industries, Inc.*, NLRB 109, 110 (1993) .................................... 27

*Manhattan Center Studios, Inc.,* 357 NLRB No. 139 (2011) ................ 31

*NLRB v. Health Care & Retirement Corp.*,
  511 U.S. 571, 573, 574 (1994) ............................................................ 24

*Authorities upon which we chiefly rely are marked with asterisks.

## TABLE OF AUTHORITIES - CONTINUED

*NLRB v. Kentucky River Community Care*,
   532 U.S. 706, 711-712 (2001)...............................................................32, 33

*NLRB v. Noel Canning*, 134 S.Ct. 2550 (2014)......................................8

*NLRB v. Prime Energy Ltd. P'ship*,
   244 F.3d 206, 212 (3d Cir. 2000)..........................................................25

*Oakwood Health Care, Inc.*, 348 NLRB 686 (2006).............................24

*Sheet Metal Workers Local 85*, 273 NLRB 523, 526 (1984) ................25

*U.S. Gypsum Company*, 93 NLRB 91 (1951) ........................................29

*Venture Industries*, 327 NLRB 918, 919 (1999) ...................................24-25

*Wasath Oil Refining Company*, 76 NLRB 417 (1948)...........................29

## STATUTES:

The National Labor Relations Act of 1935,
   29 U.S.C. §151-169...................................................1, 2, 7, 9, 19, 23, 24

29 U.S.C. §152(11) .......................2, 4, 7, 12,17, 24, 25, 27, 28, 30, 31, 34

# GLOSSARY OF ABBREVIATIONS

Pursuant to DC Circuit Rule 28(a)(3), Petitioners provide the following list of abbreviations used in this Brief:

BHR, Petitioner or Employee ..........................................Benjamin H. Realty Corp.

GC ...................................General Counsel of the National Labor Relations Board

HO ....................................................................................................Hearing Officer

HOR ................................................................................. Hearing Officer's Report

JA .................................................................................................Joint Appendix

L. 55 or Union......................................... Residential Construction and General Service Workers, Laborers Local 55

NLRA.................. The National Labor Relations Act of 1935, 29 U.S.C. §151-169

NLRB, Board or Respondent.........................The National Labor Relations Board

TR...............................................................Transcript of Administrative Hearing

## JURISDICTIONAL STATEMENT

Benjamin H. Realty Corp. (hereinafter "BHR," "Employer" or "Petitioner") seeks review of the Administrative Order of the National Labor Relations Board (hereinafter "Board,"  "Respondent," or "NLRB"), pursuant to case numbers 22-CA-110689 and 22-RC-087792 (361 NLRB No. 103), the Order dated May 7, 2015 of the Executive Secretary in case number 22-RC-087792 (unreported) and case number 22-CA-110689 (reported at 362 NLRB No. 181).  The National Labor Relations Act (hereinafter "the Act"), as amended, provides for judicial review by this Court of the NLRB's Orders pursuant to §10(f) of the Act, 29 U.S.C. §160(f). The NLRB's final Order was issued August 25, 2015 and reported at 362 NLRB No. 181.  Petitioner's timely petitioned this Court for Review on October 16, 2015. This Appeal stems from the Final Order of the NLRB that disposes of all claims with respect to all parties.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the NLRB erred in ruling that Justo Pastor Perea (hereinafter "Perea") was not a Supervisor on the date of the Election, to wit, November 8, 2012.

2.      Whether the NLRB erred in denying the Petitioner's Motion for Reconsideration to Re-Open the Record based on Perea's subsequent New Jersey Law Against Discrimination lawsuit (*Perea v. Benjamin H. Realty Corp.*, State of

1

New Jersey, Essex County Superior Court, Docket #ESX-L-4606-14), in which he admitted that he still retained supervisory status on the date of the Election, which would in turn void his ballot.

3.    Whether the NLRB erred by holding that Petitioner bore the burden of proof relative to Perea's supervisory status, based on Perea having admitted he acted as a Section 2(11) Supervisor, 29 U.S.C. §152(11) prior to the Election.

## PERTINENT STATUTES

29 USC 152

When used in this subchapter –

(1) The term "person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in cases under title 11, or receivers.

(2) The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act [45 U.S.C. 151 et seq.], as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

2

(3) The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act [45 U.S.C. 151 et seq.], as amended from time to time, or by any other person who is not an employer as herein defined.

(4) The term "representatives" includes any individual or labor organization.

(5) The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(6) the term "commerce" means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or

3

any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.

(7) The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.

(8) The term "unfair labor practice" means any unfair labor practice listed in section 158 of this title.

(9) The term "labor dispute" includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

(10) The term "National Labor Relations Board" means the National Labor Relations Board provided for in section 153 of this title.

(11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge,

4

assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

(12) The term "professional employee" mean –

(a) any employee engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes; or

(b) any employee, who (i) has completed the courses of specialized intellectual instruction and study described in clause (iv) of paragraph (a), and (ii) is performing related work under supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a).

(13) In determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

(14) the term "health care institution" shall include any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged person.

## STATEMENT OF THE CASE

On August 21, 2012, Residential Construction and General Service Workers, Laborers Local 55 (hereinafter "Union" or "Local 55") filed a Petition for an Election before Region 22 of the NLRB.

On November 8, 2012, an Election by secret ballot was conducted by the NLRB, which resulted in a 6-6 tie with one (1) challenged voter. That voter, Perea was challenged by the NLRB itself based on Perea not appearing on the "Excelsior" voting list prepared by BHR, which in turn was based on his being ineligible to vote as per his status as a Section 2(11) Supervisor as provided for in the Act.

A Hearing was thereafter conducted on December 19 and 27, 2012, before Hearing Officer Joseph Calafut. The Hearing Officer (hereinafter referred to as "HO") ultimately concluded that the Employer failed to prove that Perea was a Supervisor. The Employer filed a timely Request for Review to the HO's Decision, which was denied by the Board on October 18, 2012. At that time, the composition of the NLRB included two (2) persons whose appointments to the Board had been challenged as unconstitutional.

A Refusal to Bargain Charge pursuant to Section 8(a)(5) of the Act was filed on August 6, 2013, and a Complaint issued on August 19, 2013. The Respondent filed a timely Answer and asserted Affirmative Defenses.

7

On June 26, 2013, the United States Supreme Court issued its Decision in _NLRB v. Noel Canning_, 134 S.Ct. 2550 (2014), ordering that the challenged appointments to the Board were not valid.  A Supplemental Decision issued on November 13, 2014 from the reconstituted Board which considered _de novo_ the Board's prior October 18, 2012 Decision.  The Board once again adopted the HO's Findings and Recommendation that the challenge to the ballot be overruled and certified the results of the Election.

Thereafter, on February 6, 2015, the GC filed a Motion to Amend the Complaint relative to the Refusal to Negotiate.  On February 13, 2015, Petitioner filed an Opposition to GC's Motion to Amend the Complaint, arguing that the Motion to Amend was premature based on a prior Motion to Reopen the Record dated October 15, 2014.  This intervening Motion filed by Petitioner is based on the fact that Perea had filed a Complaint in a New Jersey State Court on June 30, 2014 against BHR, alleging that he had been discriminatorily demoted in January and July 2013, subsequent to the date of the Election.  The Motion filed by the Employer was denied on May 7, 2015 by the Executive Secretary of the Board. Thereafter on August 25, 2015, the Board issued its Final Order which effectively ratified its prior Order of November 13, 2014, holding that the Employer has failed to recognize and bargain with the Union as the exclusive collective bargaining

representative of the unit as contained in the Election, pursuant to Section 8(a)(5) of the Act.

Petitioner filed its Petition for Review on October 16, 2015. The Board filed a Cross Application for Enforcement of an Order of the NLRB, which was consolidated with this Appeal by the Court's Order dated November 25, 2015.

1. **Background**

BHR operates as the building manager of approximately sixteen (16) residential apartments in exclusively the East Orange and Orange, New Jersey area. The employees consist of residential Superintendents for each of the apartment buildings, plus porters and maintenance employees. (9/5/12 TR-17, 57, JA-31, 71). With the exception of two (2) employees, Perea hired all of BHR's superintendents, porters, and maintenance employees. (12/19/12 TR-25-42, JA-201-218).

Up through some point in 2011, the Employer operated thirteen (13) residences. (12/19/12 TR-20, JA-196). In 2011 Petitioner added three (3) additional buildings to bring his total compliment of buildings to sixteen (16). (12/19/12 TR-20, JA-196). At the time of the addition of these three (3) buildings, BHR operated with two (2) Supervisors, Juan Carlos and Perea, overseeing of the operations of all thirteen (13) and then sixteen (16) buildings. (12/19/12 TR-24, JA-200). At some point in February/March 2012, Juan Carlos relocated to

California, and concurrently, Moshe Weiss was then hired as a Manager. (12/19/12 TR-23, JA-199).

2.    **The Hiring of Moshe Weiss**

In March of 2012, Mr. Herbst made no formal announcement to either Perea or to any other employee as to the status of Mr. Weiss.  (12/19/12 TR-24-25, JA-200-201).  In fact, upon the hiring of Mr. Weiss, Mr. Herbst never informed either Perea, or any of the employees Perea supervised, that Perea was no longer acting as the Supervisor, or that Mr. Weiss was going to be the sole Supervisor over the employees.  (12/19/12 TR-25, JA-201).   Nor did Mr. Herbst ever approach Perea and advise him that he was no longer the Supervisor, and conversely, Perea never questioned Mr. Herbst whether he had any reduced supervisory obligations. (12/19/12 TR-25, JA-201; 12/27/12 TR-332, 333, JA-529-530).    In fact, Perea admitted work responsibilities did not change in any way when Mr. Weiss was hired by BHR.  (12/27/12 TR-332-333, JA-529-530).  The reason for the hiring of Mr. Weiss was due to the fact that Mr. Herbst was having difficulty running the day-to-day operations of the business, and he specifically needed help as to analyzing where cost saving procedures could be implemented.  (12/19/12 TR-26, JA-202).  Therefore, while Mr. Weiss was hired to relieve some of the burden on Perea from the increased responsibilities of the additional apartment buildings,

Perea still maintained his authority and status as a Supervisor of the Superintendents, maintenance workers and porters. (12/19/12 TR-28, JA-204).

In fact, after Weiss was hired, Weiss and Perea had separate and distinct duties as it related to the supervision of the employees. Mr. Weiss focused on the running of the main office of BHR, as well as the renovations of vacant apartments for new potential tenants, with Perea overseeing and supervising the daily maintenance work of existing tenants in apartments. (12/27/12 TR-340-341, JA-537-538). It was uncontroverted that the vacancy rate of all of Petitioner's sixteen (16) apartment buildings was roughly five (5%) percent. (12/19/12 TR-31, JA-207). In fact, this bifurcation of the responsibilities between Mr. Weiss and Perea continued until the point that Perea went on disability, which was some time in September of 2012 (less than two (2) weeks after the filing of the instant Petition, but prior to the Election held on November 8, 2012). (12/27/12 TR-343, JA-540). Moreover, Mr. Weiss went on to testify that during the times when Perea was not on disability, of the one hundred (100) service calls for existing tenants that BHR would receive in any month, Mr. Weiss would only have handled two (2) or three (3) of those calls, based on Perea overseeing the remainder. (12/27/12 TR-343-344, JA-540-541).

11

3.    **The Union's Petition, Election and Challenge to Perea's Vote**

On August 21, 2012, the Union filed a Petition for Election before Region 22 of the NLRB.   Of importance to note is that Benjamin Herbst testified during the September 5, 2012 Hearing stemming from the filing of the Petition, that Perea acted at all times in the capacity of a Supervisor.  (9/5/12 TR-34, lines 2 and 3, JA-48).  At no time during this September 15, 2012 Hearing did L. 55 object to or contest this assertion by Mr. Herbst.

On November 8, 2012, an Election by secret ballot was conducted, which resulted in a 6-6 tie, with the tie breaking vote of Perea being challenged by the NLRB itself based on Perea not being on the <u>Excelsior</u> Voting List prepared by BHR, which in turn was based on Perea's perceived supervisory status at the time.

A Hearing was thereafter conducted on December 19 and 27, 2012, before HO Joseph Calafut.   The Petitioner admitted at the commencement of the December 19, 2012 Hearing that Perea acted in the function of a Section 2(11) Supervisor up until March 2012  (12/19/12 TR-17-18, JA-193-194), as confirmed by the Union's witnesses Walter Velazco (TR-192, JA-389) and Cesar Perea (TR-239, JA-436).  However, Perea specifically contradicted these dates by indicating that he remained as a Supervisor until sometime in May, when he was allegedly assigned to additional properties to be a "Superintendent."  (12/27/12 TR-259, JA-456).  Perea ultimately went on disability on or about September 2012, and was not

12

certified to return to work until after the November 8th Election. (12/2712 TR-226, 240, JA-423).

Perea also acknowledged that owner Benjamin Herbst told him in February/March of 2012 that he (Perea) would have the same supervisory responsibilities notwithstanding the hiring of Moshe Weiss, and never advised Perea or any other employee to the contrary. (12/27/12 TR-259-260, 332, JA-456-457). Additionally, Perea confirmed that Benjamin Herbst said that Moshe was the new "boss," which Perea (and therefore, by default, all other employees as Perea by his own admission, acted as the "interpreter" for all Spanish speaking employees), understood to mean that Moshe Weiss was to have Benjamin Herbst's authority as "owner," but not diminish Perea's authority as a Supervisor. (12/27/12 TR-259-260, 332, JA-456-457, 529).

Perea specifically admitted that he was never informed by Benjamin Herbst that he had ceased to be a Supervisor; however, Perea was only informed that he was going to be a Superintendent at another building. (12/27/12 TR-289-290, JA-486-487). In fact, the entire transcript of all of the Union's witnesses is devoid of any comment from Benjamin Herbst and/or Moshe Weiss that Perea was no longer to act as a Supervisor. Rather, all of the comments made by these witnesses corroborate that Moshe Weiss advised them he was assuming the responsibilities of only Benjamin Herbst as a "boss." (12/27/12 TR-340, 345, JA-537, 542).

13

Additionally, another co-worker (Hanam Casnan) corroborated that Perea continued with his supervisory duties from March until Perea's disability. (12/27/12 TR-371-372, JA-568-569).     The Union's own witness, Avraham Cuevas, admitted on direct that the employees were never told by anyone that Perea was no longer his Supervisor.  (12/19/12 TR-166, JA-342).  This confirms and corroborates the testimony of Benjamin Herbst, Moshe Weiss and Hanam Casnan, that Perea retained his "Supervisor" status and continued to act as such.

Walter Velazco testified that since this alleged "demotion" of Perea, he never received calls from Perea between March and September (12/27/12 TR-208, 216, JA-405, 413); yet the telephone records submitted as Employer Exhibits "18," "19" and "20" (beginning on JA-868, 995 and 1125) each show daily cell phone conversations in excess of approximately five (5) minutes per call and up to a minimum of three (3) to four (4) phone calls per day to Perea.  These multiple calls are consistent with receiving directions from Perea, and not mere friendly workplace chatter as Perea maintained.  (12/27/12 TR-317, JA-514).  Perea unbelievably, and in direct contradiction to these telephone records, testified that he speaks very little to his co-workers since his alleged "demotion".  (12/27/12 TR-317-319, JA-514-516).

Even after this alleged "demotion" by the Employer, Perea admitted that on the Sabbath (Friday at sundown through Saturday at sundown), employees and

14

tenants will still reach out to him for any problems, (12/27/12 TR-284, 320, JA-481, 517), that he still continued to make deposits on behalf of the Employer (12/27/12 TR-320, JA-517, and received excessive loans greater than any other employee totaling $25,000.00 during his tenure with BHR. (12/27/12 TR-321, JA-518).

Perea also at all times maintained keys to all of the facilities of BHR. (12/27/12 TR-262, JA-459). Perea went so far as to admit that, despite this alleged "demotion," he maintained possession of the keys, and was never asked to return them by Benjamin Herbst. (12/27/12 TR-262, JA-459).

After May of 2012, Perea denied that he continued to unilaterally order supplies (12/27 /12 TR-263, JA-460), but the exhaustive evidence shows to the contrary (12/19/12 Hearing, Employer Exhibit's "3," "4" and "7," beginning on JA-637, 688, 694). Perea continued in his ability to place extensive orders for supplies in a unilateral and unchecked manner, and without any oversight from either Benjamin Herbst or Moshe Weiss. Perea continued to possess a company credit card for Home Depot. (12/27/12 TR-269, JA-466). Perea admitted that he did not fill out "Daily Work Records" like other employees (12/27/12 TR-305, 307, 322, JA-502, 504, 519), and did not fill out "Work Orders" unlike other employees (12/27/12 TR-322, JA-519).

15

Virtually all employees were hired by Perea.  (12/19/12 TR-32, 35-39, JA-208, 211-215).   While the Employer did <u>not</u> hire anyone in 2012 (besides Moshe Weiss), (12/19/12 TR-37, JA-313), this lack of hiring was not due to a dilution of Perea's responsibilities, but rather flows from the economy and the Employer's need to reduce costs.   (12/19/12 TR-105, JA-281, Employer's Exhibit "15," beginning on JA-745).   Perea's wages of $2,000.00 per pay period far exceeded what was made by <u>all</u> other employees during the period he claimed <u>not</u> to be a Supervisor.   (12/19/12 Employer Exhibit "2," beginning on JA-634).   Perea continued to receive this compensation both before and after the Election and his return to work.

Notwithstanding the above, the HO ruled that Perea ceased to be a Supervisor prior to the Election.

4.    **Perea's New Jersey State Court Case**

In December of 2013, Perea retained the Law Offices of George R. Szymanski, and forwarded correspondence to BHR directly threatening a discrimination law suit based on the "alleged" demotion of Perea that occurred on or about <u>January of 2013</u>.   Thereafter, Mr. Szymanski and counsel for Petitioner, Steven B. Horowitz, Esq. spoke via telephone on Wednesday, December 11, 2013, at which time Mr. Szymanski reiterated the January 1, 2013 demotion.   Mr. Horowitz brought to his attention the fact that the alleged demotion actually

16

occurred per Perea's testimony back in some time of March or May of 2012. This discussion confirmed by Mr. Horowitz with Mr. Szymanski via correspondence forwarded via regular mail and facsimile on December 12, 2013 (JA-1360-1362).

Notwithstanding this alerting of Mr. Szymanski as to Perea's factual inaccuracies, on June 30, 2014, Perea filed a lawsuit in the Essex County Superior Court, docket number ESX-L-4606-14. (JA-1339-1342). The Complaint was served on the Employer at some point in early September. As this Court will note from a reading of the Complaint, the factual allegations are as follows:

> "3.   The Plaintiff, Justo Pastor Perea, had been the general property manager for the defendant at several rental properties, which were owned by the defendant, since March 1, 2000.
>
> 4.   However, in September, 2012, the plaintiff experienced some back problems and was unable to work from September, 2012 to December, 2012.
>
> 5.   After the plaintiff resumed working for the defendant <u>in January, 2013, the defendant demoted plaintiff, Justo Pastor Perea</u>, to the position of superintendent for three of the defendants' buildings." (emphasis added). (JA-1340).

Clearly, the State Court Complaint made the claim that Perea did in fact act as the "Property Manager/Supervisor" for BHR at the time of the Election on November 8, 2012, which by extension is a Section 2(11) Supervisor.

### 5.   Petitioner/BHR's Motion to Reopen the Hearing

Based on the admission by Perea that he was actually a Supervisor at the time the Election, Petitioner filed a Motion to Reopen the Record with the

Executive Secretary to the NLRB on October 15, 2014. (JA-1315-1342).

Counsel for the Union submitted an Opposition Statement (JA-1348-1354) which specifically stated that the dates listed in the Complaint were "a mistake" and "in error." Even more outrageously, the attachment to the Opposition contained a letter from Mr. Szymanski in which he specifically states that "Mr. Perea is not a very good historian to begin with." (JA-1353). However, the submissions by the Union and Mr. Szymanski could not explain away the fact that Mr. Horowitz brought the incorrect dates to their attention at least six (6) months prior to the filing of Perea's State Court Complaint.

On May 7, 2015, Farah Z. Qureshi, Associate Executive Secretary, issued on Order denying the Employer's Motion for Reconsideration and Motion to Reopen the Record. (JA-1433-1434). In so holding, the Associate Executive Secretary focused on the fact that, per the HOR, the critical element in determining the loss of Perea's supervisory status was the hiring of Moshe Weiss, which occurred in March of 2012, and the fact that Mr. Szymanski somehow communicated an "intent" to amend the Complaint at some point in the future would cure the discrepancy in the alleged demotion dates. Of interest to note is that at no time subsequent to the filing of the Employer's Motion did either the Union or Mr. Szymanski attempt to attach an Affidavit from Perea indicating any such error or miscommunication.

18

6.    **The GC's Motion for Summary Judgment for Failure to Negotiate**

Following the denial of the Employer's Motion to Reopen the Record, on May 7, 2015 the Board issued an Order granting the GC's prior Motion to Amend the Complaint and directed that a further Answer to the Amended Complaint be filed on or before June 10, 2015.  The Employer filed a timely Answer to the Amended Complaint.

On August 25, 2015, the Board found that the Employer unlawfully failed and refused to negotiate with the Union in violation of Section 8(a)(5) of the Act, and ordered the Employer to bargain upon request of the Union.  (JA-1441-1444).

## SUMMARY OF THE ARGUMENT

All Arguments in the instant brief flow from the underlying erroneous Decision of the HO that Perea ceased to act as a statutory Supervisor at the time of the Election, and all subsequent Decisions of the NLRB related to Petitioner's efforts to address that erroneous Decision.

Simply put, following the HO's erroneous conclusions that Perea did not act as a Supervisor at the time of the Election, Counsel for GC and the NLRB have couched the efforts of the Petitioner/BHR as attacking the HO's "credibility" determinations that led to this conclusion.  With the exception of Petitioner/BHR's subsequent Motion for Rehearing, that conclusion could not be further from the truth.

19

Petitioner/BHR has continuously put forth the position that, even assuming the testimony of Perea and the other witnesses called by the Union are credited, the determination of Perea not being a Supervisor is both arbitrary and not supported by the substantial evidence in the record.  See *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1189 (D.C. Cir. 2000).

In this case, every witness called by the Union at the Hearings of December 19 and 27, 2012, including Perea himself, could not point to a single conversation where either Benjamin Herbst or Moshe Weiss diminished in any way, shape or form the authority of Perea.  Perea himself assumed that he had been demoted based on the hiring of Mr. Weiss.  The testimony by each witness of the Union only maintains that Mr. Weiss is the "new boss" instead of Mr. Herbst himself, not as a replacement for Perea.  When taken with the stipulation by the Union that Perea acted as a Supervisor up until the hiring of Mr. Weiss, as well as the extensive testimony of Petitioner/BHR's witnesses as to the continued authority of Perea, and the voluminous documentation of Perea's unfettered discretion in both directing employees at their jobs and supplying tools/work supplies to the employees, the only conclusion is that Perea was a Supervisor at all times through the date of the Election.  If anything, based on Perea's support for the Union, Perea unilaterally reduced his supervisory duties without the knowledge and/or consent

of the Employer. Petitioner/BHR denies that they ever directed Perea to increase his ministerial tasks.

Not to be overlooked in the determination of supervisory Status of Perea is the fact that at the initial pre-Election September 5, 2012 Hearing relative to the filing of the Petition, before even knowing the supervisory status of Perea would be an issue, Benjamin Herbst clearly asserted for the first time that Perea was a statutory Supervisor without any objection or contestation made by the Union relative thereto. (9/5/12 TR-34, JA-210).

With respect to BHR's October 15, 2014 Motion to Reopen the Record based on the subsequent New Jersey Superior Court case of Perea, the credibility of Perea does indeed become an issue. This is being based on Perea/Szymanski moving forward with the Complaint notwithstanding being alerted as to their conflict as to the dates of Perea's demotion.

The Decision of the Associate Executive Secretary erroneously lists the hiring of Mr. Weiss as the causation for the loss of Perea's supervisory duties. (JA-1433-1434). This quantum leap in logic is simply untrue. Since the "Weiss hiring" serves as the basis for the denial of the Motion, it should be reversed and/or remanded back to the NLRB for reconsideration. Moreover, the Executive Secretary also based their denial of the Motion to Reopen on the fact that Mr. Szymanski claimed it was an error, but never received nor considered any

21

Affidavit from Perea himself relative to the date of his demotion. (JA-1434). This is all the more reason as to why a Fact Finding inquiry should have been conducted into this inconsistent testimony that was discovered <u>after</u> the close of the record on December 27, 2012.

Finally, as it relates to the burden of proof being placed on Petitioner/BHR to show that Perea acted as a Supervisor at the time of the Election, the Employer maintains that the unique facts of this case require that the burden being solely on the Employer be re-evaluated. The Employer maintains that in the situation where there is a stipulation that an individual acted as a Supervisor during a time that is closely related to the filing of the Petition for an Election, that the burden should not solely be on the Employer to prove supervisory status, but rather, that the Union should have some burden of proving that the supervisory status was withdrawn by the Employer. Clearly, the Union did not prove this based on all the prior arguments. The Petitioner/BHR did not seek the benefit of Perea's supervisory status, as he was stipulated as such at a time in close proximity to the filing of the Petition for Election.

This Court should overturn the Board's Decision and find that Perea retained his Section 2(11) supervisory status at the time of the Election. Alternatively, the Court should either remand this dispute for a re-evaluation of the substantial evidence in the record supporting that the Employer never altered Perea's

supervisory status (but that Perea himself unilaterally abandoned his supervisory duties without notifying any representative of BRH), or this Court should further remand this matter for a new Hearing based on the subsequent Complaint in the State of New Jersey Superior Court filed by Perea to obtain information as to the disputed dates of his "demotion."

## STANDING

Petitioner has standing pursuant to 29 U.S.C. §160(f) as they are aggrieved by the NLRB's Decisions and Orders dated November 13, 2014, May 7, 2015 and August 25, 2015. The NLRB's Orders required BHR to negotiate with L. 55.

## ARGUMENT

The most critical, factual and legal errors in all of the Decisions flowing from the NLRB relate to the determination that Perea was not a Supervisor.

The Supervisory Determination is obviously a question of fact. The Standard of Review of the Board's factual findings are that "Judicial Review (of an Order directing a Representation Election) is available only if the Employer refuses to bargain and is found, in a Final Order of the Board, to have violated Section 8(a)(5) of the Act. This Court will uphold an NLRB bargaining unit determination unless it is arbitrary or not supported by substantial evidence in the record." See *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1189 (D.C. Cir. 2000). For the reasons that follow, it is submitted that the Board's conclusions are not only

"arbitrary" and unsupported by the substantial evidence, but a review of both the facts and the law of the "supervisory" concept can only lead to the conclusion that Perea was a Supervisor at the time of the Election.

## I.    THE HO ERRONEOUSLY CONCLUDED THAT PEREA WAS NOT A SUPERVISOR AT THE TIME OF THE ELECTION.

The HO and NLRB's conclusions that, following the arrival of Moshe Weiss, Perea lost his Section 2(11) supervisory status is unsupported by the record and extensive documentation as provided by the Employer.

The traditional test for determining supervisory status is: (1) whether the employee has the authority to engage in, or effectively recommend, any of the 12 criteria listed in Section 2(11) of the Act; (2) whether the exercise of such authority requires the use of independent judgment; and (3) whether the employee holds the authority in the interest of the employer.  *NLRB v. Health Care & Retirement Corp.*, 511 U.S. 571, 573, 574 (1994).  See also *Oakwood Health Care, Inc.*, 348 NLRB 686 (2006); *Croft Metals, Inc.*, 348 NLRB 717 (2006); and *Golden Crest Healthcare Center*, 348 NLRB 727 (2006).  The burden of proving supervisory status lies with the party asserting that such status exists.  *Oakwood Health Care, Inc.*, *supra*, 348 NLRB at 686. (To be discussed in Argument II, *infra*).

It is settled that an individual who exercises independent judgment in effectively recommending the hiring of employees is a statutory Supervisor.  See, e.g., *Donaldson Bros.*, 341 NLRB 958, 959 (2004); *Venture Industries*, 327 NLRB

24

918, 919 (1999).  See also *NLRB v. Prime Energy Ltd. P'ship*, 244 F.3d 206, 212 (3d Cir. 2000) (individual who "had substantial influence in [a] hiring decision" was a supervisor).  It is the possession of supervisory authority that is controlling.  See, e.g., *Allstate Ins.*, 322 NLRB 759, 760 (2000).  In *Facchina Construction Co., Inc.*, 343 NLRB, 886, 886-87 (2004), enfd. 181 LRRM 3344 (D.C. Cir. 2006), the Board and D.C. Circuit found that foremen were agents with apparent authority where they served as conduits between employees and management, gave out work assignments and instructions, and were responsible for overseeing work.  The title of the employee is not what is important.  Nor is it critical as to whether the supervising authority is actually used, so long as it is available.  In construing Section 2(11), the Board has often noted that it is the possession of supervisory authority and not its exercise which is critical.  See, e.g., *Cherokee Heating and Air Conditioning Co.*, 280 NLRB 399 (1984); *Sheet Metal Workers Local 85*, 273 NLRB 523, 526 (1984); *Hook Drugs, Inc.*, 191 NLRB 189, 191 (1971).

In the present case, Petitioner/BHR maintains that the record shows Perea continued to act as a Supervisor following the hiring of Mr. Weiss, and Perea's duties as a Supervisor were never diminished.  Perea ceased, of his own volition, to act as a Supervisor, and to unilaterally increase his more ministerial duties, for reasons that are known only by Perea (presumably because of his support for the Union and upon instruction by the Union in this obviously close election), but

25

Petitioner/BHR was unaware of these actions.  Perea made this conscious decision without notifying the Employer, and notwithstanding the fact that his employer had no such intent to remove his supervisory status.  See testimony of Benjamin Herbst from September 5, 2012 (prior to the Election) (9/5/12 TR-34, lines 2 and 3, JA-210).

Benjamin Herbst testified directly as to the continuing nature of Perea's supervisory status following the hiring of Moshe Weiss.  (12/19/12 TR-25-26, JA-201-202).   Moreover, the testimony of the Union's own witnesses belies any dilution in Perea's duties.  Perea acknowledged that owner Benjamin Herbst told him that notwithstanding Moshe Weiss's hiring, that Perea would have the same supervisory responsibilities, and never advised Perea or any other employees to the contrary.  (TR-259-260, 332, JA-201-202).  In fact, the entire record of all of the Union's witnesses is devoid of any comment from Benjamin Herbst and/or Moshe Weiss that Perea was no longer to be a Supervisor.  While some of the Union's witnesses did state that Moshe Weiss was a "new" or additional Supervisor, this statement, in and of itself, does not mean that Perea's responsibilities were in any way diminished by direction of management.  In fact, Perea continued to receive significantly greater wages ($2,000.00 per pay period) after this alleged demotion that was far in excess of all other employees (see Employer Exhibit "2," beginning on JA-634), he continued to make substantial purchases/orders on behalf of his

26

employer without any direction from Benjamin Herbst or Moshe Weiss (see Employer Exhibits "3," "4" and "17," beginning on JA-637, 688-749). These Exhibits equate to roughly 170 separate Purchase Orders during the time that Perea was allegedly demoted.   Perea also still continued to possess a company credit card from Home Depot (TR-299, JA-466),

The statutory criteria for supervisory status set forth in Section 2(11) are read in the disjunctive, and possession of any one (1) of the indicia listed is sufficient to make an individual a Supervisor.  _Juniper Industries, Inc._, NLRB 109, 110 (1993).  In this case, the record unequivocally and without rebuttal showed that Perea hired all employees with the exception of two (2) (who were hired by Juan Carlos) (TR-32, JA-208).  To this end, Perea hired Luis Vargez, Rudolfo Cax, Hernan Castano (TR-35, JA-211), Maurice Gonzalez, David George (TR-36, JA-212), Isaac Hernandez, Fabian Londono, Marcos Lorez (TR-37, JA-213), Carlos Ortiz, Carlos Perea (Perea's brother), Cesar Perea (Perea's son) (TR-39, JA-215), Daniel Quintana, Victor Soto, Pedro Toro, Walter Velazco (TR-42, JA-218), and Hanan Casnan (TR-369, JA-566).  Therefore, Perea hired more individuals who were on the payroll of BHR in August of 2012 (16) then individuals who actually voted in the Election held in November of 2012.  Moreover, based on the fact that no employees were hired in 2012 (with the exception of Weiss), and the argument

that the Employer never diluted Perea's supervisory status, there can be no question of the proof of <u>primary</u> indicia of supervisory authority by the Employer.

There is also substantial unrebutted "secondary indicia" in the record to support Perea's supervisory status.  Perea admitted during his direct testimony that he maintained possession to the "keys" to all buildings at the time of the Election.  At no time did Perea testify that Benjamin Herbst ever ordered Perea to return these keys.  (TR-262).  In fact, Perea admitted that the keys were hanging up in the "garage" at the "500 building," which is where he has continually maintained both tools and plumbing supplies for the entire company.    (TR-262-263, JA-459-460).  These actions clearly show that despite Perea's desire to not be a Supervisor, his own actions are in direct contradistinction to this position.    If anything, the maintaining by Perea of a tool and plumbing supply room, where no other employee/superintendent does so, is additional convincing evidence of Section 2(11) supervisory status.  See *First Western Building Services,* 309 NLRB 591, 603 (1992).

In applying the Supervisory Standards, this record lacks sufficient evidence as submitted by the Union, <u>other than mere conclusions,</u> as to Perea being relieved of his supervisory status.  Notwithstanding this unsupported conclusion that Perea was not a Supervisor, the HO acknowledged the holding of *Fred Meyer Alaska, Inc.*, 334 NLRB 646 (2001), *U.S. Gypsum Company*, 93 NLRB 91 (1951), and

_Wasath Oil Refining Company_, 76 NLRB 417 (1948), which stand for the proposition that individuals who possess the authorities spelled out in the statutory definition contained in Section 2(11) are Supervisors and can be held to be Supervisors even if the authority has not been exercised. (HOR-9, JA-1177). As the above facts demonstrate, _Fred Meyer Alaska, Inc._, (_supra_), _U.S. Gypsum Company_, (_supra_), and _Wasath Oil Refining Company_, (_supra_), cases are clearly controlling here, as it was Perea who unilaterally chose to not exercise the "supervisory" authority that was granted to him, as opposed to BHR having taken the authority away.

Another determinative fact that Perea's loss of his supervisory status was a "manufactured" event by Perea himself and/or the Union, flows directly from the testimony as it relates to the prior Co-Supervisor, Juan Carlos. Witnesses for both the Union and BHR all agreed that for a period of time before the hiring of Moshe Weiss, Juan Carlos and Perea managed to each supervise half of the buildings concurrently. See testimony of Benjamin Herbst (12/19/12 TR-21-22, JA-197-198). The Union witnesses who confirmed this were Abraham Cuevas (TR-162, JA-338), Cesar Perea (Perea's son) (TR-253, JA-450) and Perea himself (TR-257-258, JA-454-455). It is disingenuous (and very prejudiced) for the Union to admit that another Hispanic can be assigned as a Supervisor along with Perea, but when an Orthodox Jew gets hired to replace Juan Carlos, that signals a demotion to

29

Perea. Perea's supervisory status was not questioned when Juan Carlos was assigned to supervise half of the buildings; the hiring of Weiss should not be viewed as any different.

Finally, in its November 13, 2014 Decision and Certification of Representative, the Board provides its standard/rote notation that "[T]he employer has accepted the sum of the HO's credibility findings, the Board's established policy is not to overrule a HO's credibility resolutions unless the clear preponderance of the relevant evidence convinces us that they are incorrect . ." (JA-1345, note 2). The thrust of BHR's prior briefs and arguments to this Board, both in terms of the HOR as well as the Motion to Reopen, have not revolved around the credibility findings of the HO. Nor should this appeal be considered as such. Rather, Petitioner/BHR argues that even assuming the testimony by every Union witness is correct, the overwhelming evidence still leads to the inescapable conclusion that Perea's duties as a Supervisor were never eliminated prior to the time of the Election. The only time the credibility determinations were brought into question directly was upon the filing of BRH's Motion to Reopen the Record (to be discussed in Argument II, *infra*).

Based on the foregoing, the HOR should be set aside, and this Board should rule that Perea acted as a Section 2(11) Supervisor.

30

## II.   THE NLRB IMPROPERLY DENIED THE EMPLOYER'S MOTION FOR RECONSIDERATION AND MOTION TO REOPEN THE RECORD.

The Executive Secretary/NLRB correct cites *Manhattan Center Studios, Inc.*, 357 NLRB No. 139 (2011), that in a Motion to Reopen, the moving party must establish (1) that the evidence existed but was unavailable to the party before the close of the proceeding; (2) that the evidence would have changed the result of the proceedings; and (3) that it moved promptly upon discovery of the evidence. However, the Executive Secretary/NLRB then went on to hold as follows:

> "Most important, the Employer does not dispute that Weiss was hired in March 2012. Based on the credited testimony of the case, the Board determined that there was a substantial change in Perea's duties and responsibilities after Weiss was hired. The fact that a complaint signed by Perea's counsel, alone, alleged that Perea was demoted on subsequent dates does not "compel a different" result." (JA-1434).

For the reasons stated in the prior argument, not only does this logic reference a faulty HOR, it misrepresents the holdings in that faulty HOR. The Employer does not dispute that Mr. Weiss was hired on or about March 2012, or that there was a substantial change in Perea's duties after Weiss was hired. Rather, Petitioner/BHR argues that Perea maintained much of his Section 2(11) supervisory rights after Mr. Weiss' hire, and any reduction in his "duties" were the result of Perea demoting himself and not acting as a Supervisor. That instruction did not in any way come from any representative of management of BHR.

31

When coupled with the fact that both Perea and his counsel knew in advance of their filing of the State Court case that their dates were inaccurate, the fact that Perea's own attorney states he is a "lousy historian," and the fact that the Executive Secretary/NLRB relied upon a representation from Perea's counsel rather than a Certification from Perea himself directly, mandates that the record should have been reopened relative to this issue.

## III.   THE HO IMPROPERLY PLACED THE BURDEN OF PROOF OF PEREA'S SUPERVISORY STATUS ON THE EMPLOYER.

The Petitioner/BHR does not dispute the HO's blanket assertion that the burden of proving supervisory status rests with the party asserting that status. (HOR-9).  See _NLRB v. Kentucky River Community Care_, 532 U.S. 706, 711-712 (2001).  However, this case presents the unique situation in which an admitted Supervisor is now claimed by the Union to have lost his supervisory status.  (TR-17-18, JA-193-194).   The Petitioner/BHR maintains that in this unique situation, the burden should not be on the Employer to prove supervisory status, but rather, that the Union should have the burden of proving that this supervisory status was withdrawn.

To this end, there was a stipulation that Perea acted as a Supervisor up through, at a minimum, the arrival of Moshe Weiss in March of 2012.  (HOR, page 8, JA-1176).  The HO then acknowledges that at least up through May of 2012 (a period of an additional 2 months) Perea continued to act in a supervisory capacity.

32

(HOR, page 12, JA-1180). The HO then concludes that after that point, Perea's work duties diminished to those of a non-supervisory superintendent. (HOR, page 12, JA-1180). The HO failed to address the Petitioner/BHR's position that this direction never came at the behest of the Petitioner/BHR. Rather, this diminution of Perea's supervisory status was undertaken solely by Perea himself.

This situation differs from *Kentucky River Community Care*, in that Petitioner/BHR is not claiming the benefit of the supervisory status. This is based on the fact that there was a stipulation that at a time close to the November 8, 2012 Election, Perea still possessed the indicia of supervisory status. Therefore, the Employer is not "resting on the benefit of the supervisory status." Rather, the Union is now claiming that this "benefit" was somehow lost. The Union should prove this aspect of the case, which they have clearly failed to do in light of the overall testimony and evidence provided.

Taken a step further, since the Union is admitting that Perea did satisfy the indicia of being a Supervisor at some point, the Employer has presented sufficient evidence to show that he continued to possess the majority of his powers/authority subsequent to that date. (*See* Argument I, *supra*). Based on the Union's admission of Perea's supervisory status, there can be no doubt that Perea maintained his supervisory status, notwithstanding the hiring of Moshe Weiss.

33

Therefore, because of the admission by the Union that Perea possessed all of the necessary authority to be considered a Section 2(11) Supervisor, the burden should be on the Union to show that following March (or May) of 2012 this supervisory status was lost.  The fact that this burden was inappropriately placed to the Employer requires that the determination of Perea as a Supervisor should be reversed.

## CONCLUSION

BHR respectfully requests that this Court overturn or vacate the Board's decision and find that Perea was a Section 2(11) Supervisor on the November 8, 2012 date of the Election.  In the alternative, BHR requests that the Court remand this dispute for reconsideration or for a new Hearing relative to Perea's subsequent inconsistent statements as contained within his New Jersey State Court pleadings.

Dated:    February 16, 2016

Respectfully submitted:


By: */s/ Steven B. Horowitz*
    Steven B. Horowitz, Esq.
    Attorney for Petitioner
    Horowitz Law Group, LLC
    101 Eisenhower Parkway
    4th Floor
    Roseland, New Jersey 07068
    973-226-1500
    973-226-6888 (Facsimile)

34

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this Brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 32(a), the attached Opening Brief is proportionally spaced, has a typeface of 14 points or more, and contains 8,540 words.

Dated:          February 16, 2016

Respectfully submitted:

By: */s/ Steven B. Horowitz*
Steven B. Horowitz, Esq.
Attorney for Petitioner
Horowitz Law Group, LLC
101 Eisenhower Parkway
4th Floor
Roseland, New Jersey 07068
973-226-1500
973-226-6888 (Facsimile)

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2016, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By: */s/ Steven B. Horowitz*